JERRY JACKSON,

        *Plaintiff,*

v.                                **No. 3:18-cv-1494-J-PDB**

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant.*

---

# Order

Jerry Jackson brings this action under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security partially denying his application for disability insurance benefits. Doc. 1. Under review is a decision by an Administrative Law Judge ("ALJ") dated April 12, 2018. Tr. 16–31. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 16–31, and the parties' briefs, Docs. 16, 17, and not fully repeated here.

## Background

Jackson applied for disability insurance benefits in October 2015. Tr. 171–79. He claimed an onset date of August 15, 2014. Tr. 171. He has past relevant work as a "working" supervisor in a book depository, which required him to lift and carry up to 50 pounds. Tr. 39–40. He testified he was laid off on the claimed onset date for financial reasons and was still doing his job at that time. Tr. 41–42.

The ALJ issued a partially favorable decision, finding Jackson disabled beginning on November 1, 2017, but not before then. Tr. 19–26. She found he has severe impairments of left shoulder tendinopathy and diabetes mellitus with neuropathy and non-severe impairments of hypertension, gastroesophageal reflux

disease, hyperlipidemia, and alcohol abuse (in remission other than a relapse in January 2018). Tr. 19. She observed he reported a history of right shoulder pain and asthma and that a consultative examiner mentioned a vascular disorder in the report from his consultative evaluation, but she found those impairments not medically determinable. Tr. 19.

The ALJ found that, before November 1, 2017, Jackson had possessed the residual functional capacity ("RFC") to perform medium work with additional limitations: no more than frequent reaching, handling, or fingering with the left upper extremity; no crawling or climbing of ropes, ladders, or scaffolds; no more than frequent balancing, bending, stooping, kneeling, crouching, or climbing ramps/stairs; and only occasional exposure to work hazards. Tr. 19. She found his past relevant work was medium work and he could perform that work as actually and generally performed. Tr. 25. She thus found him not disabled before November 1, 2017. Tr. 26.

The ALJ found that, since November 1, 2017, Jackson possessed the RFC to perform light work with the same additional limitations.[1] Tr. 24. She found that, since November 1, 2017, he has been unable to perform his past relevant work. Tr. 25. She thus considered whether a significant number of jobs he can perform exists in the national economy. Tr. 26. She found that, even if he has the RFC to perform a full range of light work, Medical-Vocational Rule 202.06 requires a finding of disability as of November 1, 2017.[2] Tr. 26. She thus found him disabled as of November 1, 2017. Tr. 26.

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b).

[2]At step five, an ALJ may rely on the medical-vocational guidelines (the "grids") or use a vocational expert's testimony. *Phillips v. Barnhart*, 357 F.3d 1232, 1239–40 (11th

## Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and quoted authority omitted). A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If substantial evidence supports an ALJ's decision, a court must affirm even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "This restrictive standard of review applies only to findings of fact," and "no similar presumption of validity attaches to the [Commissioner's] conclusions of law[.]" *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (internal quotation marks and quoted authority omitted).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

---

Cir. 2004). The grids allow an ALJ to consider factors such as the claimant's age, exertional limitations (such as limitations to light or medium work), ability to speak English, education, and job experience. *Id.* at 1240. Under Medical-Vocational Rule 202.06, a person is disabled if he is limited to a full range of light work, he is in the "advanced age" category (55 or older), he is a high school graduate or more, his educational level provides no direct entry into skilled work, and he has skilled or semi-skilled skills that are not transferable. 20 C.F.R., Part 404, Subpart P, App'x 2 § 202.06.

**Arguments and Analyses**

Jackson challenges the ALJ's finding he could perform medium work between August 15, 2014 (the alleged onset date), and October 31, 2017 (the day before the ALJ found him disabled). Had the ALJ limited him to light work, she would have found he could not return to his past relevant work, and Medical-Vocational Rule 202.06 would have required a finding of disability.

Jackson argues the ALJ erred in discounting opinions of state-agency reviewing physician Jack Rothman, M.D., and consultative examiner Ciceron Lazo, M.D., both of whom limited Jackson to less-than-medium work before November 1, 2017. Doc. 16 at 8–16.

To obtain disability insurance benefits, a claimant must demonstrate he is disabled. 20 C.F.R. § 404.1512(a). A claimant is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The existence of an impairment, alone, does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore*, 405 F.3d at 1213 n.6.

The Social Security Administration ("SSA") evaluates every medical opinion it receives. 20 C.F.R. § 404.1527(c).[3] A "medical opinion" is a statement from an

---

[3]"For claims filed … before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." 20 C.F.R. § 404.1527. Because Jackson filed his application in October 2015, Tr. 171–79, the rules in § 404.1527 apply.

4

"acceptable medical source" that reflects judgment about the nature and severity of a claimant's impairment. *Id.* § 404.1527(a)(1).

In assessing the weight to give a medical opinion, an ALJ considers the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor that supports or contradicts the opinion. *Id.* § 404.1527(c)(1)–(6). An ALJ applies the same standards whether the medical opinion is from a treating physician, a consultative examiner, or a non-examining, reviewing physician. *Id.* § 404.1527(c). An ALJ need not explicitly address each factor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

An opinion of a treating specialist is entitled to the most weight, while an opinion of a non-examining, reviewing physician is entitled to the least weight. *See* 20 C.F.R. § 404.1527(c)(1), (2). "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). An ALJ must state with particularity the weight given to each medical opinion and the reasons for the weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

An ALJ must consider all relevant record evidence. 20 C.F.R. § 404.1520(a)(3). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks and quoted authority omitted). An ALJ's determinations may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983).

On April 12, 2016, Dr. Rothman undertook an RFC analysis, Tr. 82–84, after reviewing Jackson's medical records, including an MRI of his lumbar spine performed on December 2, 2008, that showed a bulging disc at L5-S1, Tr. 79. He found Jackson has severe impairments of spine disorders and diabetes mellitus. Tr. 81. He opined Jackson has the following exertional limitations: he can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds; he can stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; he can sit (with normal breaks) for about 6 hours in an 8-hour workday; and he has no restrictions on pushing and/or pulling. Tr. 82. Asked to explain the exertional restrictions and cite specific facts supporting the opinion, he wrote, "bulging disc, neck strain and back strain." Tr. 82. He opined Jackson can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, or scaffolds. Tr. 82–83. Asked to cite specific facts to support the opinion, he wrote, "Due to DDD [degenerative disc disease]." Tr. 83. He assigned no limitations for reaching and feeling but limited Jackson to frequent fine and gross manipulation (fingering and handling) on the left, citing a January 2016 consultative examination in which Dr. Lazo found 4/5 grip strength on the left and 4/5 arm strength on the left. Tr. 83. He assigned no environmental limitations. Tr. 83.

The ALJ gave "little weight" to Dr. Rothman's medical opinion for the period before November 2017.[4] Tr. 23. She adopted many of Dr. Rothman's proposed functional limitations (frequent handling and fingering on the left, balancing, stooping, kneeling, crouching, and climbing ramps/stairs). Tr. 19. She assigned some limitations greater than those found by Dr. Rothman (limiting Jackson to frequent reaching on the left; no crawling or climbing of ropes, ladders, or scaffolds; and occasional exposure to work hazards) and some limitations less than those found by Dr. Rothman (limiting Jackson to frequent, as opposed to occasional, climbing of

---

[4]The ALJ gave Dr. Rothman's opinion "significant weight" for the period starting on November 1, 2017. Tr. 24. Jackson does not challenge that decision. *See generally* Doc. 16.

ramps or stairs). Tr. 19. She rejected his opinions about Jackson's exertional limitations, explaining:

> Here, the undersigned finds Dr. Rothman's medical assessment somewhat accurate. However, his conclusion that the claimant is limited to a reduced range of 'light' exertional work prior to the established onset date [November 1, 2017] appears unsupported by the totality of the objective medical evidence, which consistently shows largely normal medical examinations and disorders that improve with appropriate conventional treatment during this time frame.

Tr. 23 (single quotation marks in original).

The ALJ did not err in evaluating Dr. Rothman's opinions. As required, she stated the weight she was giving Dr. Rothman's opinions for the period before November 1, 2017 ("little weight") and explained why (the totality of the objective medical evidence consistently shows largely normal medical examinations and disorders that improve with appropriate conventional treatment).

Substantial evidence, discussed in the decision, supports the reasoning. *See, e.g.*, Tr. 420–22 (treatment note from September 30, 2014, appointment with Audrey Wooten, M.D., noting normal review of systems and normal physical examination, including normal ambulation; no tenderness in joints, bones, or muscles; normal tone and motor strength; normal movement of all extremities; and normal gait and station); 466, 467, 473, 474, 482 (treatment records from December 30, 2015, to January 1, 2016, emergency room visit and hospital admission for chest pain, which resolved during admission; noting elevated blood sugars at admission that improved with medications and noting Jackson reported only intermittent compliance with his diabetes regimen; noting largely normal physical examination, including normal range of motion and muscle tone; noting Jackson denied back pain and admitted to "[strenuous] activity such as lifting refrigerators prior to the start of this pain a month ago"); 568–72 (report from January 4, 2016, consultative examination by Dr. Lazo noting Jackson was in no obvious distress and had no difficulty getting on and off the exam table and in and out of a chair; his cervical spine had full range of motion

without pain; his thoracolumbar spine had full range of motion with reported pain during range of motion; he had negative straight leg raise tests bilaterally at 80 degrees when supine and 90 degrees when sitting; he had good range of motion in shoulders and hands with moderate stiffness in left shoulder after 90 degrees; he ambulated without an assistive device, although he stood leaning to the right; he could heel, toe, and tandem walk); *see also* Tr. 21 ("Foremost, the claimant's August 2014 alleged onset date of disability is not corroborated by contemporaneous medical records; and the claimant even testified at the hearing he was 'let go' by his employer in August 2014 for reasons unrelated to medical problems. In addition, the claimant indicated he experienced some neuropathy symptoms in his hands and left shoulder pain, but he was able to perform his work duties when he was laid off in 2014; and that his symptoms gradually progressed and intensified *after* he stopped working.").

Jackson argues the ALJ erred because she "never even discussed or analyzed Mr. Jackson's degenerative disc disease or the 2008 lumbar spine MRI findings," she "glossed over Mr. Jackson's spinal impairment," she "did not even find it was limiting," and "Dr. Rothman disagreed and instead reviewed all the impairments." Doc. 16 at 12.[5]

This argument is unpersuasive. The ALJ did not have to mention every piece of evidence, so long as it is obvious she considered Jackson's condition as a whole. *Dyer*, 395 F.3d at 1211. That the ALJ considered Jackson's condition as a whole, including back limitations, is obvious. She summarized Dr. Lazo's January 2016

---

[5]The Court understands this argument to be the ALJ failed to consider all relevant aspects of Dr. Rothman's opinion, not that the ALJ erred by failing to find Jackson's degenerative disc disease was a severe impairment at step two. In any event, a finding of any severe impairment satisfies step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, an ALJ need not identify every severe impairment at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011). Still, she must demonstrate she considered the claimant's severe and non-severe impairments in combination at step three and in assessing the RFC. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). The ALJ did so here.

consultative examination report, in which he reported Jackson had full range of motion of the thoracolumbar spine with some pain reported and negative straight leg raise tests. Tr. 23. And she adopted postural limitations. Tr. 19. She did not, as Jackson suggests, ignore his back symptoms. Regardless, the mere existence of a diagnosis—such as degenerative disc disease or a bulging disc—does not translate to a particular functional impairment or undermine RFC findings. *Moore*, 405 F.3d at 1213 n.6. Jackson fails to explain how an MRI showing a bulging disc in 2008 supports restrictions greater than those assigned by the ALJ, especially given that the MRI was taken more than five years before the alleged onset date, during which time Jackson continued to perform his medium-duty job.

To the extent Jackson faults the ALJ for failing to mention that Dr. Rothman used the degenerative-disc-disease diagnosis as evidence to support his proposed exertional limitations, any such error is harmless. The ALJ considered the exertional limitations Dr. Rothman imposed, Tr. 23, and her reason for rejecting Dr. Rothman's exertional limitations—lack of support in the objective medical evidence—holds true regardless of whether Dr. Rothman attributed those limitations to a back condition or some other condition.

Remand to reconsider Dr. Rothman's opinions is not warranted.

Dr. Lazo performed a consultative examination in February 2018. Tr. 801–06. Before Dr. Lazo examined Jackson in February 2018, he completed a consultative examination of Jackson in January 2016 at the state agency's direction. Tr. 568–72. The report from the 2016 examination reflects a largely normal physical examination, with Dr. Lazo noting Jackson presented in no obvious distress and had no difficulty getting on or off the exam table; full range of motion in his cervical spine without pain; 5/5 grip and arm strength on the right; good range of motion of his shoulders and hands; good range of motion of the lower extremities, with 5/5 strength of the bilateral legs and feet; full range of motion of the thoracolumbar spine; negative straight leg raise tests; good range of motion in his hips, knees, ankles, and feet; and

no weakness of motor functions. Tr. 569–70. Dr. Lazo also stated Jackson could "heel, toe, tandem walk and squat" and did not require use of an assistive device to ambulate. Tr. 570. He also noted abnormal findings, including: reported pain during range of motion of the thoracolumbar spine; 4/5 grip and arm strength on the left; moderate stiffness in the left shoulder after about 90 degrees of motion; mild impairment of fine or gross dexterities on the left; mild decreased sensation in the toes; and a lean to the right when standing. Tr. 569–70. Dr. Lazo's assessment was history of motor vehicle accident in 2007 causing neck and back strain; left shoulder moderate discomfort possibly due to supraspinatus strain and tendinosis; and type II diabetes mellitus (insulin-requiring, uncomplicated). Tr. 570. Dr. Lazo did not complete an assessment of Jackson's RFC.

In February 2018, Dr. Lazo completed another consultative examination at the request of Jackson's administrative attorney. *See* Doc. 16 at 11. At the examination, Jackson reported his condition was aggravated after a motor vehicle accident in December 2017. Tr. 801. He was using a walker for support. Tr. 801. On examination, Jackson appeared to be in some physical distress and seemed confused during most of the interview when giving details. Tr. 802. He had moderate difficulty getting on and off the exam room table and in and out of a chair. Tr. 802. Compared to the 2016 examination, this physical examination revealed more abnormal findings, including diminished range of motion of the thoracolumbar spine due to dizziness and some discomfort doing forward flexion; 3/5 grip and arm strength bilaterally; marked stiffness of both shoulders with decreased range of motion; moderate impairment of fine and gross dexterities bilaterally; inability to heel, toe, tandem walk, and squat due to poor balance and lower back pain; and mild dragging of both feet while ambulating with a walker. Tr. 803. Dr. Lazo stated that Jackson needed an assistive device to walk due to poor balance. Tr. 803. Dr. Lazo's assessment was type II diabetes mellitus (insulin dependent under inadequate control, compromised by peripheral neuropathy and perivascular disease in the legs with moderate weakness in upper and lower extremities); possible cerebral small vessel disorder due to

diabetes causing moderate memory deficits, dizziness, and moderate general weakness; low back pain myofascial mechanical and degenerative disc disease at L5–S1; and bilateral shoulder capsulitis causing marked stiffness and marked decreased range of motion. Tr. 803.

Dr. Lazo completed a "Physical Residual Functional Capacity Questionnaire," with many of his responses delivered as check marks or circled answers to pre-printed options. Tr. 809–13. Asked to give a prognosis for Jackson, he wrote "poor." Tr. 809. Asked to identify conditions causing Jackson's pain, he wrote "peripheral diabetic neuropathy[,] vascular disease[,] muscular deconditioning." Tr. 809. He opined Jackson's impairments had lasted or could be expected to last at least 12 months. Tr. 810. He opined Jackson is not a malingerer and emotional factors do not contribute to the severity of Jackson's symptoms and functional limitations. Tr. 810. He opined Jackson's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation. Tr. 810. He opined Jackson would be off-task 25 percent or more of a typical 8-hour workday. Tr. 810. He opined Jackson was incapable of even "low stress" jobs. Tr. 810. Asked how many city blocks Jackson could walk without rest or severe pain, he wrote, "half a block but will take him a long time." Tr. 810. He opined Jackson can sit 30 minutes at a time and stand 5 minutes at a time. Tr. 810–11. He opined Jackson can sit less than 2 hours total in an 8-hour workday and stand/walk less than 2 hours total in an 8-hour workday. Tr. 811. He opined Jackson needs to include periods of walking around during an 8-hour workday, stating Jackson must walk every 5 minutes for 5 minutes at a time. Tr. 811. He opined Jackson needs a job that permits shifting positions at will from sitting, standing, or walking. Tr. 811. He opined Jackson would need an unscheduled break "every 30 min[utes] to one hour" during an 8-hour workday and would need to rest 30 minutes each time before returning to work. Tr. 811. He opined Jackson must use an assistive device when engaging in occasional standing/walking. Tr. 811.

Dr. Lazo opined Jackson can lift less than 10 pounds occasionally, can lift 10 pounds rarely, and can never lift 20 or 50 pounds. Tr. 812. He opined Jackson can occasionally look down, turn his head right or left, look up, and hold his head in a static position. Tr. 812. He opined Jackson can occasionally stoop (bend), rarely twist and crouch/squat, and never climb ladders or stairs. Tr. 812. He assigned bilateral limitations for reaching, handling, and fingering, limiting Jackson to grasping, turning, and twisting objects for 30 percent of an 8-hour workday; making fine manipulations with the fingers for 50 percent of an 8-hour workday; and reaching for 30 percent of an 8-hour workday. Tr. 812. He opined Jackson's impairments would produce "good days" and "bad days" and Jackson likely would be absent from work more than 4 days a month because of his impairments or treatment. Tr. 812. He opined Jackson can have no exposure to temperature extremes, dust, fumes, gases, smoke, and hazards but can have exposure to wetness, humidity, perfumes, and pollen up to one-third of the time. Tr. 813. Asked, "Have these symptoms and limitations applied since 8/15/2014," Dr. Lazo circled "Yes." Tr. 813.

The ALJ set forth evidence supporting her finding that, from August 15, 2014, until October 31, 2017, Jackson had been able to perform medium work with additional limitations, including Jackson's testimony he performed his work duties as a working warehouse supervisor until he was laid off for economic reasons on August 15, 2014; medical records showing generally conservative treatment and generally normal medical examinations; and the report from Dr. Lazo's 2016 consultative examination. Tr. 21–24. She did not discuss Dr. Lazo's 2018 RFC assessment in the section of the opinion addressing the period from August 15, 2014, to October 31, 2017. Tr. 20–24.

The ALJ found Jackson's physical limitations increased starting on November 1, 2017, and cited medical records to support that conclusion, including the findings of Dr. Lazo's 2018 consultative examination. Tr. 24–25. In addressing Dr. Lazo's 2018 RFC assessment, the ALJ stated, "Here, the undersigned finds Dr. Lazo['s] 2018

[consultative examination] report generally consistent with the record as a whole, which reveals a significant progression of symptoms and limitations with regards to the claimant's severe medically determinable impairments. Therefore, the undersigned accords some weight to Dr. Lazo's medical opinion to the extent consistent with the instant decision." Tr. 25.

Jackson argues the ALJ failed to adequately explain why she was discounting Dr. Lazo's 2018 RFC assessment and failed to mention that Dr. Lazo opined that the limitations expressed in the 2018 RFC assessment applied as of August 15, 2014. Doc. 16 at 13–14. He argues that accepting Dr. Lazo's opinions "to the extent consistent with" the rest of the ALJ's decision is "circular argument without substance." Doc. 16 at 15. He claims harm because Dr. Lazo assessed him with limitations beginning in August 2014 far more limiting than the ALJ's functional capacity assessment for the period from August 2014 to October 2017. Doc. 16 at 15.

This argument is unpersuasive. Dr. Lazo was not a treating physician,[6] so the ALJ owed his opinions no particular deference. She could have discussed Dr. Lazo's 2018 opinions more thoroughly, but Jackson shows no reversible error. Reading the ALJ's detailed decision as a whole, it is clear she implicitly rejected Dr. Lazo's 2018 opinions to the extent they conflicted with her conclusions that Jackson could perform medium work with additional limitations from August 15, 2014, until October 31, 2017, and that his condition significantly deteriorated after that date. As explained, substantial evidence supports the finding about the pre-November 2017 ability to work, including Jackson's testimony he was laid off from his job on August 15, 2014, for reasons unrelated to his physical limitations and Dr. Lazo's 2016 report, which included a largely normal physical examination and stated that Jackson did not need an assistive device to walk, in direct contradiction to his 2018 assessment. Remand

---

[6]Although Dr. Lazo examined Jackson two times, Jackson does not argue that Dr. Lazo was a treating physician, and his 2018 consultative examination report clearly states he is not a treating physician. *See* Tr. 809 (writing "not treating physician" in response to request to describe Jackson's treatment and response).

for the ALJ to explicitly state these findings would be an "idle and useless formality." *Wyman-Gordon Co.*, 394 U.S. at 766 n.6 (quoted).

Remand to reconsider Dr. Lazo's 2018 opinions is not warranted.

Without citation, Jackson asserts "[m]edium work is intense for someone with shoulder and back problems" and "[m]edium work is intense work for an individual with Mr. Jackson's medical conditions." Doc. 16 at 11, 13. To the extent these assertions are intended as arguments, they are unpersuasive. As explained, the mere existence of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore*, 405 F.3d at 1213 n.6.

Without citation, Jackson asserts "[n]othing in the medical records establishes that he could lift 50 pounds for about three hours a day and 25 pounds for the rest. His daily activities do not support this, the medical opinions contradict this, and the testimony contradicts this. The ALJ's finding that Mr. Jackson retained the RFC to perform medium work is not supported by any concrete evidence." Doc. 16 at 13. Likewise, he asserts, "There is simply no evidence in the disability reports, hearing testimony, or medical records that would support the ALJ's finding that Mr. Jackson could perform *medium work*. No records indicate that he was lifting 50 pounds on an occasional basis and the record does not contain any medical opinions from any … physicians during the time period in question indicating that Mr. Jackson could lift and carry 50 pounds up to 1/3 of the workday and lift 25 pounds for 2/3 of an eight hour workday." Doc. 16 at 10 (emphasis in original).

To the extent Jackson argues the ALJ had to base her RFC analysis on a medical opinion or the absence of a medical opinion corresponding to the RFC undermines it, the argument is unpersuasive. The ALJ partially discredited Dr. Rothman's and Dr. Lazo's opinions. And, as explained, after those opinions were discredited, the ALJ was left with testimony and medical records supporting her finding that Jackson could perform medium work before November 1, 2017. No

medical opinion specifically stating that Jackson could lift 50 pounds occasionally and 25 pounds frequently was required. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923–24 (11th Cir. 2007) (rejecting argument that, without discredited treating physician's opinion, there was nothing in record to support RFC finding; treatment notes constituted substantial evidence to support RFC finding).

To the extent Jackson argues the record had to contain some other, explicit or "concrete" evidence he could lift 50 pounds occasionally and 25 pounds frequently before November 1, 2017, the argument is unpersuasive because it misapplies the burden. To decide whether a person is disabled, the SSA uses a five-step sequential process, asking whether (1) he is engaged in "substantial gainful activity," (2) he has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) he can perform any of her "past relevant work" given his RFC, and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of persuasion through step four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Commissioner need not prove that Jackson *could* perform medium work before November 1, 2017. Instead, Jackson must prove that he *could not* perform his past, medium work—that is, that he could not lift up to 50 pounds and that he could not frequently lift 25 pounds.

Jackson cites no authority holding the record must include explicit evidence establishing a claimant's ability to engage in every aspect of an RFC. Instead, the law requires only that substantial evidence support a finding. And, as explained, substantial evidence supports the ALJ's finding Jackson could perform medium work before November 1, 2017. The substantial evidence includes Jackson's testimony he was laid off for financial, not physical, reasons and medical records showing largely normal physical examinations before November 1, 2017 (including one after the

claimed onset date in which he admitted to lifting refrigerators). *See, e.g.*, Tr. 41–42, 482.

To the extent Jackson contends his own testimony contradicts the RFC, the ALJ found that his statements about the intensity, persistence, and limiting effects of his symptoms were not fully supported before November 1, 2017, Tr. 21, and he does not challenge that finding. *See generally* Doc. 16. Regardless, the question is not whether some evidence could support a finding that Jackson was limited to light work before November 1, 2017. The question is whether substantial evidence supports the ALJ's finding he could perform medium work in that time period. *See Martin*, 894 F.2d at 829. As explained, it does.

Remand to reconsider the RFC for the period before November 1, 2017, is not warranted.

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Jerry Jackson and close the file.

**Ordered** in Jacksonville, Florida, on March 23, 2020.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of Record